UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JOE C. LEWIS, JR., and DALTON BREWER, | ) ) ) Civil No. 09-280-GFVT |
| Plaintiffs, | ) ) |
| V. | ) ) **MEMORANDUM OPINION** |
| LAUREL COUNTY SHERIFF'S DEPARTMENT and RICHARD SAPCUT, Individually and in his Official Capacity as Laurel County Deputy Sheriff, | ) **AND ORDER** ) ) ) ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Motion for Summary Judgment [R. 23] filed by Defendants Laurel County Sheriff's Department and Richard Sapcut, who has been sued in his individual capacity and in his official capacity as Laurel County Deputy Sheriff. The matter has been fully briefed, and it is now ripe for the Court's review. For the reasons set forth below, the Court grants summary judgment in favor of the Defendants.

**I.**

Late in the evening of June 24, 2008, Jeremy Looney called 911 to report that he believed dog fighting was then taking place in his neighbor's backyard. Specifically, Looney directed the 911 dispatcher to a house in which Joe Lewis, III ("Lewis III"), resided. At the time, Plaintiffs Lewis and Brewer were at the home of Lewis III visiting. Defendant Sapcut, along with other officers, responded to the 911 call.

1

In their Complaint, the Plaintiffs allege that Deputy Sapcut did not conduct a proper investigation before accusing them and Lewis III of dog fighting and taking the case to the grand jury. Specifically, they allege that "Sapcut took a weak and poorly investigated case and fabricated a fictitious, grandiose dog fighting ring–including sixty-seven dogs–and convinced the Grand Jury to indict the Plaintiffs." [R. 1 at ¶ 24.] The record reflects that a Laurel County grand jury indicted the Plaintiffs on August 15, 2008, on one count of cruelty to animals in the first degree. [R. 23, Attach. 21.]

The Plaintiffs claim that Deputy Sapcut knew there was no evidence to support charging Plaintiff Lewis, and they note that the charge against him was dismissed on the motion of the prosecutor in October of 2008. [R. 1 at ¶¶ 35, 27-8.] They also note that Plaintiff Brewer was acquitted of the charge against him after a jury trial. [*Id.* at ¶ 49.] The Plaintiffs allege that Deputy Sapcut made false and defamatory statements to the press about their case that damaged their reputations, and they further allege that the Laurel County Sheriff's Department appears unwilling to control Sapcut's "outrageous and unlawful" behavior. [*Id.* at ¶¶ 64, 67.]

The Plaintiffs raise federal claims of false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983. Additionally, they raise state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, gross negligence, malicious prosecution, libel, libel *per se*, slander, slander *per se*, defamation, and defamation *per se*. They seek damages, including an award of punitive damages.

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D.Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)). The Court has no duty, however, "to search the entire record to establish that it is bereft of a genuine issue of material fact." *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (citation omitted).

### B.

It appears that the Plaintiffs have made all of their claims against all three Defendants, the Laurel County Sheriff's Department, Deputy Sapcut in his individual capacity, and Sapcut in his official capacity. The Court will first address each claim as it relates to Deputy Sapcut in his individual capacity.

### 1. False Arrest and Malicious Prosecution

In order for the Plaintiffs to succeed in their wrongful arrest claim brought pursuant to 42 U.S.C. § 1983, they "must prove that the police lacked probable cause." *Everson v. Leis*, 556 F.3d 484, 498 (6th Cir. 2009) (citation omitted). Similarly, in order to succeed in their § 1983 malicious prosecution claim, they must demonstrate that their "prosecution was initiated without probable cause." *Cook v. McPherson*, 273 F. App'x 421, 423 (6th Cir. 2008) (citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005). Lack of probable cause is also an element of a malicious prosecution claim brought pursuant to Kentucky state law. *See Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).

"A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Everson*, 556 F.3d at 498 (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). According to the Sixth Circuit, "[a] determination of whether probable cause existed requires us to examine the totality of the circumstances, and we may consider only the information possessed by the arresting officer at the time of the arrest." *Id.* (citation and internal quotation marks omitted). Further, "[a] finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id.* at 498-99 (citation and internal quotation marks omitted).

The Plaintiffs allege that Deputy Sapcut arrested them during the evening and early morning hours of June 24 and 25, 2008. The record reflects that the two men were placed in

4

handcuffs, although officers ultimately decided not to take them into custody at that time. Assuming that they were arrested, Deputy Sapcut had probable cause to make the arrests.

Deputy Sapcut and other officers arrived at the residence of Lewis III in response to a 911 call indicating that dogs were being fought in the backyard. [*See* R. 23, Attach. 6.] While on the scene, officers interviewed Jeremy Looney, the neighbor who called 911. [*See* R. 23, Attach. 4 at 7.] Mr. Looney told the officers that he had heard dogs yelping and shrieking from the area behind Lewis III's home where he kept Crown, his pit bull, tied up. [*See id.* at 2, 7.] Through his window, he observed two figures with a flashlight tying a stray dog that had been in the neighborhood earlier that day to a metal staircase on the edge of the driveway. [*See id.*] According to Mr. Looney, after several minutes the men untied the dog, went back behind the house, and the yelping and screaming of the dogs started again. [*See id.* at 3, 7.] After another minute or two, the stray was taken back to the staircase and tied up. [*See id.*] Mr. Looney told officers that after he made the 911 call, he saw a lady drive up and enter the house; she quickly left, and he watched Lewis III untie the dog from the staircase. [*See id.* at 6.] Police cars then pulled up. [*See id.*] Heather Looney, Mr. Looney's wife, also told police that she saw the stray dog tied to Lewis III's steps. [*See* R. 23, Attach. 5 at 5.]

In addition to the statements of Mr. and Mrs. Looney, officers found Lewis III's injured pit bull tied to a tree in the backyard. [*See* R. 24, Attach. 1.] Later, they located the injured stray under a wooden deck at a nearby residence. [*See id.*] Veterinarian reports confirm that the pit bull had broken teeth and multiple bite wounds on its head and neck, and the stray dog, a Saint Bernard mix, had freshly broken upper canines and bite wounds on its head, chest, and neck. [R. 23, Attachs. 8 and 9.]

5

Officers entered the residence of Lewis III, which was then occupied by Lewis III and the Plaintiffs. Officers observed what appeared to be blood on Plaintiff Brewer's clothing for which he was unable to offer an explanation. [*See* R. 21, Attach. 12.] At his deposition, Brewer admitted that there was blood on his clothes. [R. 23, Attach. 11 at 2.] Officers also found a list of sixty-seven "kennel dog names," including The Ripper, Crown II, and Killa Cam'ron [R. 23, Attach. 14], as well as a list of "kennel names" such as Midwest Mafia and Big Block Kennels [R. 24, Attach. 4].

Kentucky law provides that

> [t]he following persons are guilty of cruelty to animals in the first degree whenever a four-legged animal is caused to fight for pleasure or profit:
>
> (a) The owner of the animal;
>
> (b) The owner of the property on which the fight is conducted if the owner knows of the fight;
>
> (c) Anyone who participates in the organization of the fight.

KRS § 525.125(1)(a)-(c). Under a totality of the circumstances, the evidence described above, including the statements of Mr. and Mrs. Looney, the condition of the dogs, the presence of the Plaintiffs in the residence, the blood on Brewer's clothing, and the lists of kennels and dog names, provided Deputy Sapcut with probable cause to believe that the Plaintiffs had committed the crime of cruelty to animals in the first degree.

The Plaintiffs argue that if Deputy Sapcut had investigated further, he would have found that it would have been impossible for Mr. Looney to witness dog fighting on Lewis III's property from his kitchen window in the dark of night. While it is true that an officer cannot ignore exculpatory evidence in determining whether probable cause for an arrest exists, *Everson*,

556 F.3d at 498, the Sixth Circuit has held that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (citations omitted). Here, because Mr. Looney's statements appeared to be corroborated by the other evidence found at the scene, all of which added up to probable cause, Deputy Sapcut had no obligation to continue to investigate.[1]

The Plaintiffs also suggest that Deputy Sapcut ignored another plausible explanation for the sounds heard by Mr. Looney, the bite wounds found on the dogs, and the blood observed on Brewer's clothings–that the men had broken up a fight between Crown and the stray. It is unclear whether this alternative explanation was offered to the police by the Plaintiffs or Lewis III on the night in question. [*See* R. 23, Attach. 10 at 3; *id.*, Attach. 11 at 2; *id.*, Attach. 4 at 7.] Regardless, the Sixth Circuit has held that "law enforcement 'is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" *Ahlers*, 188 F.3d at 371 (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Thus, the Plaintiffs' explanation would not have undermined Deputy Sapcut's probable cause determination.

The Plaintiffs argue that even if Deputy Sapcut had probable cause to arrest Plaintiff Brewer, he did not have probable cause to believe Plaintiff Lewis had been involved in the

---

[1]Moreover, the Court notes that its review of the record shows that Mr. Looney did not necessarily state that he could see the dogs fighting. Rather, he stated that he could hear dogs yelping and screaming from the general area where he knew Crown to be kept, and he stated that he observed men leading the stray dog away from that area. [*See* R. 23, Attach. 4 at 2-3.]

7

commission of any crime. The Plaintiffs point to the 911 call made by Mr. Looney, in which he stated that "a couple of boys" were fighting dogs in the neighborhood, and to other statements made by Mr. Looney and his wife indicating that they had only observed two young men, Brewer and Lewis III, with the stray dog. Kentucky's first degree animal cruelty statute, however, punishes anyone who participates in the organization of a dog fight. KRS § 525.125(1)(c). Plaintiff Lewis was in the residence behind which dog fighting was believed to have just occurred and in which lists of kennel names and over sixty dog names were found. Under the totality of the circumstances, the evidence was sufficient to lead a reasonable officer to conclude that Plaintiff Lewis had participated in the organization of a dog fight.

Although the Plaintiffs were not taken into custody during the evening and early morning hours of June 24 and 25, 2008, they were arrested and prosecuted after they were indicted by a Laurel County grand jury on August 15, 2008. [*See* R. 23, Attach. 21.] "[I]t has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citation and internal quotation marks omitted). Thus, the Plaintiffs cannot succeed on their false arrest and malicious prosecution claims for the period after their indictment.

The Plaintiffs argue that their malicious prosecution claims may proceed in spite of the indictment because Deputy Sapcut's testimony before the grand jury was untruthful. An exception to the rule that the issuance of an indictment conclusively determines the existence of probable cause exists "where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury." *Cook v. McPherson*, 273 F.

8

App'x 421, 424 (6th Cir. 2008) (citing *Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002)). The Plaintiffs complain that Deputy Sapcut testified to the grand jury about information he received from Amy Young, after the incident of June 24-25, advising that Brewer and two other men had been engaging in dog fighting behind a local church in Whitley County. [*See* R. 23, Attach. 18 at 5-6.] At a deposition, Ms. Young testified that although she believed the statements she made to Deputy Sapcut, she had no proof to support her allegations. [*See id.* at 7-8.] The Plaintiffs also complain that Deputy Sapcut provided testimony to the grand jury suggesting that the Plaintiffs were involved in a larger dog fighting ring, and that the dog names found in Lewis III's residence were tied to dogs on the Internet. The Plaintiffs state that Deputy Sapcut could not prove these allegations. But an inability to prove a statement does not demonstrate that it is false or not made in good faith. Further, the Plaintiffs have not shown that Deputy Sapcut's testimony before the grand jury was *knowingly* false at the time when it was made. Notably, a transcript of Deputy Sapcut's testimony has not been provided to the Court, and, in spite of the Plaintiffs' arguments that Sapcut made false remarks about the Plaintiffs' involvement in other dog fighting crimes, the indictment only charged the Plaintiffs with one count of first degree cruelty to animals for participating in dog fighting on or about June 25, 2008. [*See* R. 23, Attach. 21.]

Even if probable cause was lacking as to one or both of the Plaintiffs before or after the issuance of the indictment, Deputy Sapcut is entitled to qualified immunity on the federal claims of false arrest and malicious prosecution. As the Sixth Circuit stated in *Ahlers*, § 1983 claims "are limited by the qualified immunity exception, such that a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that

9

his or her actions were lawful." 188 F.3d at 372-73. Deputy Sapcut is entitled to immunity "if a reasonable officer could have believed that probable cause existed to arrest" the Plaintiffs, even if that reasonable officer was mistaken. *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991). In order to remove the cloak of qualified immunity a § 1983 plaintiff "must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers*, 188 F.3d at 373 (internal citation omitted). According to the Supreme Court, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229 (citation and internal quotation marks omitted). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Id.* (citation and internal quotation marks omitted). Here, in light of the evidence discussed above tending to indicate that the Plaintiffs had engaged in dog fighting, the Court finds that Deputy Sapcut acted reasonably in arresting and prosecuting the Plaintiffs. The record does not reflect plainly incompetent or intentional conduct that violated the Plaintiffs' rights.

Additionally, Deputy Sapcut is entitled to immunity from liability for the Plaintiffs' state law claim of malicious prosecution. Under Kentucky law, "official immunity is 'immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.'" *Lewis v. Meyers*, 2010 WL 3829200, at *3 (W.D. Ky. Sept. 24, 2010) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001)). Official immunity is applicable to "'the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision,

and judgment, (2) in good faith, and (3) within the scope of the employee's authority.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522). A police officer's decision to make an arrest is considered a discretionary act under Kentucky law. *Id.* at *4 (citing *Yanero*, 65 S.W.3d at 522). Here, as stated previously, Deputy Sapcut acted reasonably, in good faith, and within the scope of his authority in arresting and prosecuting the Plaintiffs.

### 2. Negligence and Gross Negligence

The Plaintiffs' base their claims of negligence and gross negligence on the same conduct discussed in relation to their claims of false arrest and malicious prosecution. Just as Deputy Sapcut is entitled to official immunity from suit for the Plaintiffs' state law malicious prosecution claim, he is entitled to official immunity for the Plaintiffs' state law claim of negligence. *See Foster v. City of Georgetown, Kentucky*, 2007 WL 1385937, at *8 (E.D. Ky. May 7, 2007). In addition, "a negligence case . . . requires proof (1) that the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Here, however, the Plaintiffs arrests were supported by probable cause. Therefore, Deputy Sapcut did not breach any duty owed to the Plaintiffs. Further, in *Tunne v. Paducah Police Dept.*, the court noted that a

> plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim. *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. App. 1978). The policy considerations addressed by the elements of a malicious prosecution action would be thwarted if the plaintiff were allowed to proceed on a theory of negligence. *Id.* The plaintiff may not avoid the higher standards of malicious-prosecution claims by bringing negligence claims against the defendants under the same facts that constitute his other claims.

2010 WL 323547, at *11 n. 4 (W.D. Ky. Jan. 21, 2010) (quoting *Bertram v. Fed. Exp. Corp.*,

11

2008 WL 170063, at *6 (W.D. Ky. Jan. 17, 2008)). For these reasons, the Plaintiffs cannot succeed in their claim of negligence.

Nor can the Plaintiffs succeed in their claim of gross negligence. To prevail on this claim, the Plaintiffs would have to show that Deputy Sapcut demonstrated an absence of even slight care. *See Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205, 207 (6th Cir. 1990). As stated previously, however, Sapcut did not breach a duty of care to the Plaintiffs, and he acted reasonably in pursuing their arrest and prosecution.

### 3. Libel, Libel Per Se, Slander, Slander Per Se
### Defamation, Defamation Per Se

As stated by the Kentucky Court of Appeals in *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981), "[d]efamation is not a readily understood area of the law." In *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), Kentucky's Supreme Court explained that "[d]efamation by writing and by contemporary means analogous to writing . . . is libel. Defamation communicated orally is slander." In their Complaint, the Plaintiffs allege that Deputy Sapcut made false and defamatory statements to a Lexington news reporter. The record reflects that Sapcut made statements regarding his investigation into reported dog fighting at Lewis III's residence to WKYT reporter Sherelle Roberts shortly after the events of June 24 and 25, 2008. [*See* R. 24, Attach. 13 (Internet new article by Ms. Roberts dated June 26, 2008).] Although other news organizations reported the story, it appears that Deputy Sapcut only gave one interview; WKYT then shared the video footage from that interview with other stations. [*See* R. 23, Attach. 16.] The Plaintiffs also claim that Deputy Sapcut gave false and defamatory testimony to the grand jury that indicted them. Thus, because both the statements made to the grand jury to Ms. Roberts were spoken, the Plaintiffs assert claims for slander against Deputy

12

Sapcut, not libel.

The Plaintiffs cannot succeed on a defamation claim against Deputy Sapcut based on his grand jury testimony. Under Kentucky law, "[w]here a witness willfully and maliciously gives false testimony, he is liable to prosecution for perjury or false swearing." *Reed v. Isaacs*, 62 S.W.3d 398, 399 (Ky. App. 2000) (quoting *McClarty v. Bickel*, 155 Ky. 254, 159 S.W. 783, 784 (1913)). No civil action will lie against him, however, "because it is a well-settled rule in practically all jurisdictions that the testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him." *Id.* (quoting *McClarty*, 159 S.W. at 784); *see also Bryant v. Commonwealth*, 490 F.2d 1273, 1274 (6th Cir. 1974) ("Under the law of Kentucky, a witness before a grand jury who provides false testimony is liable for a criminal action in perjury, but not for any civil action . . . since testimony in a judicial proceeding is privileged as a matter of public policy."). Accordingly, Deputy Sapcut's statements to the grand jury are absolutely privileged.

In Kentucky, a qualified or conditional privilege attaches to communications "made in good faith, without actual malice, by one who believes he has a duty or an interest to a person with a corresponding duty or interest." *Brewer v. American Nat. Ins. Co.*, 636 F.2d 150, 154 (6th Cir. 1980); *see Stringer*, 151 S.W.3d at 796. Here, the Court finds that Deputy Sapcut's statements to the press, and specifically to Ms. Roberts, are entitled to a qualified privilege. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 278 n. 9 (1993). By speaking to Ms. Roberts, Deputy Sapcut, a law enforcement officer, was communicating to the public about a criminal investigation, a matter of interest to the community and the public at large.

Where a qualified privilege exists, it "preclude[s] any presumption[] of malice, but still

13

leave[s] the party responsible for both falsehood and malice if affirmatively shown." *Stringer*, 151 S.W.3d at 797 (citation and internal quotation marks omitted). Further, "[t]he condition attached to all such qualified privileges is that they must be exercised *in a reasonable manner and for a proper purpose*." *Id.* (emphasis in original). The Plaintiffs argue that Deputy Sapcut knew that his statements were false, which demonstrates sufficient ill will to prove malice. The Plaintiffs further argue that Sapcut did not exercise his privilege in a reasonable manner and for a proper purpose.

But the Plaintiffs have not shown that Deputy Sapcut knew that his statements to Ms. Roberts were false. First, the Court notes that it is difficult to evaluate Sapcut's statements because no transcript of his interview with Ms. Roberts has been placed in the record, and few direct quotes are attributed to Sapcut in the newspaper articles and news story excerpts that do appear in the record. Further, it appears that Sheriff Yaden was also interviewed by the press, thus making it more difficult to know what information not directly attributed to either officer was gathered from Deputy Sapcut, and what information was gathered from Sheriff Yaden.

The Plaintiffs do appear to take particular issue with one quote directly attributed to Sapcut: "I will take these guys to the grand jury, and I will get them indicted. They will go to jail." [R. 33 at 16.] Ultimately, of course, this statement proved true, and thus it is not an adequate basis for a claim of defamation. *See Stringer*, 151 S.W.3d at 795-96.

The Plaintiffs also highlight a portion of Ms. Roberts's story in which she stated that Deputy Sapcut told her that the three suspects lied. Specifically, they refer to an excerpt in which Roberts played video of Sapcut stating, "They related they didn't know anything about the dogs, didn't know how the dog–the fights or anything," followed by Ms. Roberts stating, "But he says

14

that's a lie. Police found evidence on their land. Enough evidence to get the dogs out of there." [R. 33 at 16.] At her deposition, however, Roberts admitted that she could not recall whether Sapcut used the words "that's a lie," explaining that it was the spirit of what was conveyed. [R. 23, Attach. 15 at 7.] The statement, placed in context, suggests that Deputy Sapcut may have said that he did not believe the suspects based on the evidence. In any event, this excerpt is insufficient to demonstrate malice on the part of Sapcut or an abuse of the qualified privilege.

The Plaintiffs point to several instances in which news reporters refer to a larger dog fighting ring or operation engaged in by the Plaintiffs. A reporter in Louisville, for example, stated that "the Laurel County Sheriff's Departments says they may have a [sic] evidence to a larger dog fighting operation." [R. 33 at 16.] In her own story, Roberts stated that the dogs named on the list found in Lewis III's residence "are believed to be tied to several illegal dog fighting rings across the U.S." [*Id.*] Even if these or similar statements were made by Deputy Sapcut, however, the Plaintiffs have not shown that they were spoken maliciously, or that they demonstrate an abuse of the privilege. Rather, the evidence of record suggests that Deputy Sapcut and the Laurel County Sheriff's Department truly believed they had uncovered evidence of a large dog fighting operation in Lewis III's home.

In short, the facts that the charge against Plaintiff Lewis was dismissed and that Plaintiff Brewer was acquitted do not prove that Deputy Sapcut's statements were false or maliciously made. Further, the fact that there was insufficient proof to bring charges related to a larger dog fighting operation does not mean that Sapcut's marks were false or malicious. Deputy Sapcut is entitled to a qualified privilege against the Plaintiffs' claims of defamation.

## 4. Intentional Infliction of Emotional Distress and
## Negligent Infliction of Emotional Distress

In order to recover on a claim for intentional infliction of emotional distress, or the tort of outrage, under Kentucky law, a "plaintiff must show that defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency, that a causal connection exists between the conduct complained of and the distress suffered, and that the resulting emotional distress was severe." *Banks v. Fritsch*, 39 S.W.3d 474, 480-81 (Ky. App. 2001). Here, for the reasons discussed above, the Plaintiff's cannot demonstrate intentional, reckless, or outrageous conduct on the part of Deputy Sapcut. Moreover, the tort of outrage

> is intended as a "gap-filler," proving redress for extreme emotional distress where traditional common law actions do not. Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action.

*Bennett v. Malcomb*, 320 S.W.3d 136, 137 (Ky. App. 2010) (quoting *Banks*, 39 S.W.3d at 481). Thus, because the Plaintiffs alleged that Sapcut's conduct amounted to the commission of traditional torts such as malicious prosecution and defamation for which recovery for emotional distress is permitted, they cannot also make a claim for intentional infliction of emotional distress. *See Grace v. Armstrong Coal Co., Inc.*, 2009 WL 366239, at *4 (W.D. Ky. Feb. 13, 2009).

In Kentucky, in order to recover for negligent infliction of emotional distress, that emotional distress must be accompanied by physical contact or injury. *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 928 (Ky. 2007). Additionally, according to the Kentucky Supreme

16

Court, "[it] is not enough that emotional distress be accompanied by contact–it must be *caused* by contact. This also means that any contact must precede the emotional distress before recovery is permissible under a negligence theory." *Id.* at 929 (emphasis in original). Here, although there may have been contact when the Plaintiffs were placed in handcuffs in the evening and early morning hours of June 24 and 25, 2008, the Court has found that the arrest was supported by probable cause. Thus, the Plaintiffs cannot sustain a claim for negligent infliction of emotional distress based on that conduct. To the extent the Plaintiffs make a claim for negligent infliction of emotional distress based on Deputy Sapcut's statements to the press, that claim must fail because there was no physical contact that would have caused the emotional injury.

## C.

Because the Court has determined that Deputy Sapcut is not liable in his personal capacity, there can be no liability against the Laurel County Sheriff's Department. *See Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 679 (6th Cir. 2005); KRS § 70.040. Further, because the Plaintiffs' claims against Deputy Sapcut in his official capacity are truly claims against the Laurel County Sheriff's Department itself, there can be no liability against Sapcut in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

## III.

Accordingly, and for the reasons stated above, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Summary Judgment [R. 23] is **GRANTED**;

2. This is a final and appealable Order; and

3. Judgment is entered contemporaneously herewith.

This the 8th day of August, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge